**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DDMS TECHNOLOGIES,       § | | |
|     Plaintiff,       § | | |
| § | | |
| v.       § | CIVIL ACTION NO. H-06-0070 | |
| § | | |
| ANACOMP, INC., *et al.*,       § | | |
|     Defendant.       § | | |

## **MEMORANDUM AND ORDER**

Plaintiff DDMS Technologies, L.L.C., ("DDMS") has filed this commercial suit against Anacomp, Inc. ("Anacomp"). DDMS's Third Amended Complaint ("Complaint") [Doc. # 12] alleges that Anacomp committed fraud and breached the parties' contract, and that the doctrines of equitable estoppel and quasi-estoppel should operate to prevent Anacomp from denying the existence of that contract or DDMS's rights under it. Anacomp has filed a Motion for Summary Judgment [Doc. # 14] ("Motion") in which it urges the Court to apply the statute of limitations and the statute of frauds to bar DDMS's claims of fraud and breach of contract, that the independent injury doctrine precludes relief on the fraud claim, and that the doctrines of equitable and quasi-estoppel are inapplicable. DDMS has responded ("Response") [Doc. # 17]. Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court **denies** the Defendant's Motion for Summary Judgment.

I.   **FACTUAL BACKGROUND**

*Undisputed Facts.* Anacomp, a corporation doing business in Texas, sought a contract with the City of Houston (the "City") to transfer some of the City's data to CD-ROMs and microfiche. As part of their bid for the contract, on July 30, 1999, Anacomp submitted a letter of intent designating "Documentation Data Mngmt. Systems" as their minority or woman-owned subcontractor.[1] The letter specified that DDMS anticipated share of work was 12% of the $600,000 contract, or $72,000 in expected value. The letter is signed, illegibly, by the "prime contractor" (presumably Anacomp) but the signature block for the MWBE subcontractor is blank. Anacomp won the contract, which commenced on April 4, 2000 and ended April 4, 2004. Anacomp admits it did not provide any work to DDMS during the contract period.

*DDMS's Allegations.* DDMS has submitted an affidavit from its Chief Executive Officer, Vijay Krishen. Krishen avers that she was a party to the 1999 letter of intent. She explains that DDMS expanded its operations and incurred costs in expectation of the subcontract. Krishen asserts that on April 4, 2000, the contract's start date, an Anacomp representative delivered the written subcontract, which was "a voluminous document."

---

[1]   The city of Houston has a policy of stimulating the growth of businesses owned by minorities and women. *See* Houston Municipal Code, Chapter 15, Article V, § 15-81, *et seq*. As part of that policy, certain contractors are required to submit a plan for meeting a target percentage of participation by a minority or women owned business enterprise ("MWBE"). *Id*. § 15-85. Contractors may be sanctioned for not making good-faith efforts to comply with the requirement, but there is no penalty for not meeting the target participation. *Id*. § 15-85, 15-86(a),

Krishen Affidavit, Doc. # 17, at 1. According to Krishen, she signed the document (referred to as the "April 4 document") and, at Anacomp's request, stamped it with DDMS's seal. The Anacomp representative allegedly balked when Krishen attempted to copy the April 4 document, "insisting that the document must be taken to the City immediately, if DDMS was to act as the subcontractor." *Id*. Krishen avers that Anacomp "promised to provide a conformed copy," but that Anacomp never did so. *Id*. Anacomp denies the existence of the April 4 document. DDMS asserts that it was prepared to render performance under it and waited for an opportunity to do so until October 2003. DDMS, by then believing that Anacomp would not give it a portion of its contract with the City, sought mediation and binding arbitration. No arbitration took place[2] and the parties were unable to resolve their dispute. DDMS filed suit in Texas state court on October 12, 2004, and Anacomp removed the case to this Court. DDMS accuses Anacomp of breach of contract and fraud. It also asserts that Anacomp may not, under the doctrines of quasi-estoppel and equitable estoppel, deny the existence of a contract between the parties or or DDMS's right to compensation under it. Anacomp now moves for summary judgment on the basis that the fraud claims are untimely and precluded by the independent injury doctrine; that the contract is unenforceable under the statute of frauds; and that neither equitable nor quasi-estoppel apply.

---

[2] Documents in the summary judgment record suggest that the parties had agreed earlier to engage in binding arbitration. According to DDMS, Anacomp returned its demand for arbitration unopened.

**II.   SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322-23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)). However, if the moving

party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts

which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### III.  ANALYSIS

#### A.  Fraud Claim

***Statute of Limitations.***  Anacomp urges the Court to hold that DDMS's fraud claim is barred by the statute of limitations. Texas law imposes a four-year limitations period on claims of fraud, beginning "the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.004(a)(4). Anacomp cites *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988),[3] for the proposition that the cause accrues as soon as the false representation is made. DDMS filed its suit in state court on October 12, 2004. DDMS alleges in the Complaint that Anacomp presented it with the April 4 document on April 4, 2000, and that is when the allegedly false representations were made. Anacomp argues that DDMS's fraud cause of action accrued on April 4, 2000, and the fraud claim is untimely by approximately six months.

Anacomp's argument is rejected. Texas applies the "discovery rule" exception to the statute of limitations, which "defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of

---

[3]   *Woods* predates § 16.004(a)(4), but applies the same 4-year limitations period prescribed by that statute.

action." *Computer Associates Intern., Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). The parties do not explain whether DDMS would have been expected to render performance immediately, or whether it was reasonable to assume that the assignment of duties from Anacomp would not begin for some time, but the Court must draw all inferences in favor of DDMS as the non-movant. *See Reaves Brokerage Co.*, 336 F.3d at 412. DDMS supplies evidence from CEO Krishen that she "believed that [Anacomp] would comply with their representation to use DDMS' services at some point during the contract term." Krishen Affidavit, at 1. The Court cannot conclude as a matter of law that prior to October 12, 2000, during the first six months after the alleged misrepresentations in April 2000, that DDMS knew or should have known that it would not be assigned any material responsibilities pursuant to the alleged agreement during the entire four-year period.[4] There remains a genuine issue of material fact about when DDMS knew or should have known about Anacomp's alleged misrepresentations and its claim of fraud. Summary judgment on the fraud claim on the basis of the statute of limitations is inappropriate on the current record.

Anacomp has filed an untimely Reply [Doc. # 22] in which it argues that DDMS waived the discovery rule by failing to specifically plead it in the Complaint. Texas courts unambiguously require a party attempting to use the rule to shield its claims from the statute of limitations to plead the rule in an original or amended petition. "A defendant who has established that the suit is barred cannot be expected to anticipate the plaintiff's defenses to

---

[4]  It is clear that by October 2003, when DDMS first sought alternative dispute resolution, that DDMS knew of its claims against Anacomp.

that bar. A matter in avoidance of the statute of limitations that is not raised affirmatively by the pleadings will, therefore, be deemed waived." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) (citing Tex. R. Civ. P. 94). If this case were still in a Texas court, DDMS would be deemed to have waived the discovery rule by not raising it until its response to Anacomp's Motion. This Court is bound by the Fifth Circuit, which squarely addressed this question in *Colonial Penn Ins. Co. v. Market Planners Ins. Agency, Inc.*, 1 F.3d 374 (5th Cir. 1993). *Colonial Penn* recognized that even when a federal court relies on state law for the applicable limitations rules, it still must apply federal law to determine the proper standard for pleadings. *Id*. at 376. Therefore, "while the discovery rule must be specifically pleaded in Texas State Court to avoid the statute of limitations, it need not be specifically pleaded in federal court." *Id*. (citing *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1425 (5th Cir.1992)). A plaintiff in federal court is only bound by the notice pleading standard, which is satisfied when the plaintiff's complaint alleges "facts sufficient to give notice of its reliance on the discovery rule." *Id*. As the fraudulent actions alleged by DDMS were inherently undiscoverable for an indeterminate period of time (the length of which cannot be determined with the existing summary judgment record), Anacomp had sufficient notice that any assertion of the statute of limitations would be subject to the discovery rule.

***Independent Injury.*** Anacomp argues that DDMS's fraud claim is precluded by the independent injury doctrine. A "plaintiff's claim may sound in both tort and contract, but if the defendant's conduct would give rise to liability only because it breaches the parties'

agreement, the plaintiff's claim ordinarily sounds only in contract." *Exxon Mobil Corp. v. Kinder Morgan Operating L.P. "A"*, 192 S.W.3d 120, 126-27 (Tex.App.—Houston [14th Dist.] 2006), no pet. h.). *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. V. Care Flight Air Ambulance Service, Inc.*, 18 F.3D 323, 326 (5th Cir. 1994) ("Texas law has long distinguished tort liability from contract liability as between the parties to a contract, seeking to avoid the availability of both tort and contract liability for the same conduct and the same kind of harm or loss."). DDMS cursorily asserts that the doctrine "has no relevance," Response [Doc. # 17], at 6, but does not elaborate.

In *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998), the Texas Supreme Court analyzed the effect of the independent injury doctrine on claims of fraudulent *inducement*. Because "Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations," the Court held that "tort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Id*. at 46, 47. *Formosa*'s rule does not govern claims of simple fraud. "Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

DDMS's Complaint alleges that "defendant fraudulently represented to Plaintiff that Defendant would use Plaintiff's services as the subcontractor." Complaint, at 4. It

characterizes this claim as "fraud." The claim may be interpreted in at least three ways. The first possibility is that DDMS is alleging fraudulent inducement, *i.e.* that Anacomp induced DDMS to agree to render services under a contract that exists but that Anacomp did not intend to perform when Anacomp signed it. This is a fraudulent inducement theory, that is, that Anacomp's misrepresentations secured DDMS's acquiescence to the contract at issue. Characterized in that fashion, DDMS may seek tort damages "irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract." *Formosa*, 960 S.W.2d at 47.

Alternatively, DDMS may be claiming that it was induced to detrimentally rely on Anacomp's representations that there *would* be a contract in the future. It is irrelevant to this theory whether there actually was a contract, and indeed Anacomp asserts that there was not. *See* Amended Answer, ¶ 10, at 3. This would be a claim that DDMS detrimentally relied on Anacomp's early representations that it would eventually contract with DDMS to support and service its own anticipated contract with the City. This is consistent with Krishen's affidavit, in which she states that before April 4, 2000, she "took steps and incurred costs to expand my office facilities, equipment and personnel in anticipation of servicing the subcontract." Krishen Affidavit, at 1. This would be a simple fraud claim, *see Haase*, 62 S.W.3d at 798, and the independent injury doctrine would not apply. If read in that fashion, "the defendant's conduct would give rise to liability independent of the fact that a contract

exists between the parties, [so] the plaintiff's claim may sound in both tort and contract." *Exxon Mobil Corp.*, 192 S.W.3d at 127.

A third possible interpretation is that DDMS is claiming that Anacomp committed fraud in that it intended to comply with the April 4 document but then fraudulently failed to perform. This theory assumes that there is a contractual obligation between the parties and that Anacomp breached its obligations thereunder. This claim would be barred under the independent injury doctrine. The Court notes that this reading is inconsistent with Anacomp's Amended Answer, in which it denies that there was an April 4 document, let alone a binding contract. To the extent that there was a contract between the parties, DDMS may not proceed on a theory that it was damaged purely by Anacomp's *fraudulent* failure to perform. Insofar as DDMS is alleging fraudulent inducement or simple fraud, however, the independent injury doctrine is inapplicable in this case.

### B.     Breach of Contract Claim

***Statute of Frauds***. Anacomp contends, as a threshold matter, that any contract it might have had with DDMS is unenforceable under the statute of frauds. This argument fails for several reasons. The statute of frauds is inapplicable if there was a written contract. Krishen's affidavit plainly states that an Anacomp representative delivered the April 4 document to her office and had it signed and sealed by DDMS, and that this document was a written contract. *See* Krishen Affidavit, at 1. There is a genuine issue of material fact about the existence of a written contract.

Further, assuming there was no written contract between the parties, Texas law makes an unwritten contract unenforceable if it is for "goods" worth more than $500, TEX. BUS. & COMM. CODE § 2.201, or for a "service" "not to be performed within one year" of the agreement, *id*. § 26.01.  Anacomp asserts the putative contract at issue here is one "to provide Anacomp certain goods that DDMS expressly asserts were valued at over $500."  Motion for Summary Judgment, at 4, citing page 2 of the Complaint.  This citation and contention are completely unfounded.  Nowhere does the Complaint describe the alleged contract as one for goods; nor does it specify the value of any items DDMS would provide to Anacomp.  DDMS establishes in the Krishen Affidavit, at 1 (consistent with allegations in the Complaint), that the contract was for services, not goods.  Anacomp provides no evidence to the contrary.  Nor has it identified any evidence or a stipulation on DDMS's part as to the value of any goods at stake.  If any goods were to be provided under the parties' alleged contract, there a genuine issue of material fact as to their value.

Anacomp also fails to demonstrate that the statute of frauds is applicable if, as seems to be the case, the contract was for services.  A contract for services need only be in writing "if the promises cannot be performed within one year." *Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501, 503 (Tex. 1998).  Anacomp does not establish that the services DDMS was to provide, if any, could not have been performed within one year.  Without specific evidence as to what services DDMS would have performed and how long they would have taken, there is a genuine issue of material fact as to whether its contractual obligations would have taken more than one year.

***Statute of Limitations.***  Anacomp argues that the statute of limitations on DDMS's breach of contract claim expired on April 4, 2005, but that DDMS did not serve Anacomp with process in this case until December 2005.[5]  The limitations period for breach of contract claims in Texas is four years.  *See* TEX. CIV. PRAC. & REM. § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002).  Suits for breach of contract must be filed within four years of the breach.  *Id*. ("It is well-settled law that a breach of contract claim accrues when the contract is breached.").  In order for this action to be outside the limitations period, then, DDMS's alleged contract would have to have been breached before December 2001.  Anacomp has not shown with any evidence that DDMS knew or should have known the alleged contract was breached before December 2001.  DDMS has introduced evidence that it believed, or that it was reasonable for it to have believed, that Anacomp would comply with the contract until October 2003, when it sought mediation.  The Court has no evidence on which to conclude as a matter of law that the alleged contract was breached so early in its term.  There is a genuine issue of material fact on this issue, making summary judgment on the breach of contract claim on the basis of limitations inappropriate.

---

[5] Under Texas law the limitations period ends when service is completed, not when the suit is filed. *Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990).  Anacomp calculates the four-year limitations period beginning April 4, 2001, reasoning that any contract that was not completed by that date would be barred by the statute of frauds.

### C.     Estoppel

Finally, Anacomp asserts that the doctrines of equitable estoppel and quasi-estoppel are inapplicable to this case.

***Quasi-Estoppel***.  "Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."  *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) (citation omitted).  DDMS urges that Anacomp should be estopped from taking "a position that is inconsistent with its previous statements to Plaintiff and the City of Houston, to the detriment of Plaintiff." Complaint, at 5.  It is undisputed that DDMS was a qualified MWBE subcontractor under the City's ordinances, and that Anacomp received the City's contract in part because Anacomp represented that it would use its best efforts to utilize DDMS pursuant to those ordinances.  Anacomp thus benefitted from its representation to the City that it would seek to use DDMS as a subcontractor.  Anacomp asserts that it committed only to use its best efforts to utilize DDMS as a subcontractor, and denies that there was, or that Anacomp ever represented that there was, a binding agreement to do so.  This position is consistent with the letter of intent it submitted to the City, but inconsistent with DDMS's version of events. DDMS has submitted admissible evidence that an Anacomp representative induced it to sign the April 4 document as a contract and took that document to the City as proof of Anacomp's binding relationship with a MWBE entity.   Because Anacomp's conduct and its

representations to DDMS and to the City are disputed, Anacomp has failed to show the absence of a genuine issue of material fact as to whether its position now is consistent with its representations to DDMS or the City in 2000. Its request for summary judgment on quasi-estoppel is denied.

*Equitable Estoppel.* DDMS's theory of the case is that it detrimentally relied on Anacomp's promise to give it work in connection with Anacomp's performance of the City contract. DDMS explains that it expanded its operations in expectation of the subcontract. Accordingly, DDMS claims, Anacomp should now be equitably estopped from denying the existence of that contract.[6] In relation to this theory, it asks for the expected value of the subcontract rather than damages in the amount of its expenditures in reliance on Anacomp's promises. In Texas, "the doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgens of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16. Equitable estoppel generally "cannot be grounded on a promise to do something in

---

[6] DDMS's theory seems more consistent with the doctrine of promissory estoppel than equitable estoppel. But the availability of promissory estoppel as an affirmative basis for relief, rather than a defense, is unsettled in Texas law. *See, e.g., Stanley v. CitiFinancial Mortgage Co., Inc.*, 121 S.W.3d 811, 820 (Tex.App.—Beaumont 2003, pet. denied); *Reyna v. First Nat'l Bank in Edinburg*, 55 S.W.3d 58, 70 n.4 (Tex.App.—Corpus Christi 2001, no pet.). Because DDMS characterizes their claim as equitable estoppel, the Court does not delve into this issue.

the future." *Stanley*, 121 S.W.3d at 820. As Anacomp analyzes DDMS's claims, DDMS has not alleged that Anacomp made any false statements of *present* facts. DDMS is not specific as to what statements underlie its equitable estoppel theory,[7] but it appears that the dispute here also turns on what representations Anacomp made and whether there was any contract signed on April 4, 2000. These fact issues are material and genuine, and preclude summary judgment.

### III.    CONCLUSION

There are genuine issues of material fact as to whether a contract existed between the parties and when DDMS knew or should have known that it would not receive any of the work generated by Anacomp's contract with the city. These issues preclude summary judgment on any of DDMS's claims. It is therefore

**ORDERED** that the Motion for Partial Summary Judgment [Doc. # 14] is **DENIED**.

**SIGNED** at Houston, Texas, this **30th** day of **October, 2006**.

_____
Nancy F. Atlas
United States District Judge

---

[7] If there was no contract, or if all representations focused on Anacomp's plans for the future, then the claims may well not support the application of equitable estoppel.